UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE SMART MARKETING GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> CONSUMER GUIDE, LLC and PUBLICATIONS INTERNATIONAL, LTD., <br><br> Defendants. | Case No. 04 C 0146 <br><br> Judge Joan B. Gottschall |

## DEFENDANT'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant Publications International, Ltd., ("PIL") by its attorneys, hereby requests that this Court enter judgment in its favor, as a matter of law, pursuant to Rule 50 (a) of the Federal Rules of Civil Procedure on Plaintiff's claim for damages based on lost profits. In support hereof, Defendant states as follows:

Under Federal Rule of Civil Procedure 50 (a), a court should grant judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 745-6 (7th Cir. 2007). Defendant has been fully heard and renews all of the Rule 50(a) motions made orally to the Court on February 2 and February 4, 2009, for the reasons stated on the record. Defendant further submits this written motion with respect to lost profits.

### Standards for Recovery of Lost Profits

The rules regarding lost profits have remained consistent for many years, and have been acknowledged and strictly applied by the Seventh Circuit. *See, e.g., F:A J Kikson v.*

*Underwriters Laboratories, Inc.* 492 F.3d 794, 802 (7th Cir. 2007); *TAS Distributing Co. v. Cummins Engine Co.*, 491 F.3d 625 (7th Cir. 2007); *Zenith Electronics v. WH-TV Broadcasting*, 395 F. 3d 416 (7th Cir. 2005). Lost profits must be proved with a reasonable degree of certainty or they will not be allowed. *See Milex Products v. Alra Labs, Inc.*, 237 Ill. App. 3d 177 (1992). The courts do not allow "the use of speculative, inaccurate or false projections of income in the valuation of a business . . . ." *SK Hand Tool Corp. v. Dresser Indus.*, 284 Ill. App. 3d 417 (1996). The reason for this rule is simple: "a new business has no right to recover lost profits because it has yet to demonstrate what its profits will be." *See Kiswani v. Pheonix Security Agency*, 247 F.R.D. 554, 558 (N.D. Ill. 2008). Per *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir.2005), lost profits cannot represent "hopes rather than the results of scientific analysis."

As a general rule, expected profits of a new commercial business are considered to be too uncertain and too remote to allow recovery. *TAS Distributing*, 491 F.3d at 633. This "new business rule" applies to new ventures as well as to new product lines in established businesses. There are some exceptions to the new business rule, as first set forth more than 15 years ago in *Milex Products*, 237 Ill. App. 3d 177, but none of the exceptions apply here. Finally, the courts have held that "prior success with a similar business generally does not provide ample information to calculate lost profits for a new business venture because conditions vary with each business." *See*, 247 F.R.D. at 559.

### The Evidence in this Case

1. <u>Plaintiff's Accounting Expert</u>

Plaintiff's damage theory rests entirely on the unverified, untested calculations of Martin Birnbaum. Birnbaum knows nothing of the industry at issue, and he did not verify any of the

assumptions necessary for his calculations. Birnbaum tried to verify the assumptions on the internet, but he was unable to do so. Unable to verify the assumptions, and knowing absolutely nothing about the industry, Birnbuam simply took the information from plaintiff and performed some mathematical calculations. Making matters worse, Birnbaum acknowledged that he had no idea as to what plaintiff's expenses actually were—and he certainly did not know what expenses would be reasonable in the industry—making his profit calculation inherently unreliable. He did not verify any expense records, did not look at bank statements and did not even have the benefit of accrual-based financial statements. How can profits be calculated without some verification of expenses?

In this case, plaintiff's revenues and expenses are completely unverified. Plaintiff has simply pontificated about what it hoped would happen, assuming a number of factors would be true—factors that had not yet, and perhaps never would, come to be. This is exactly the sort of unreliable information that has been rejected by the courts. "To prove projected profits and sales, a plaintiff must present testimony from a qualified witness using 'professional methods' to reach a 'testable' dollar amount." *See F:A J Kikson*, 492 F.3d at 802. Birnbaum clearly did not use professional methods to reach a testable dollar amount.[1]

2. Plaintiff's Principals and Plaintiff's Three Weeks of Experience

Obviously aware of the fact that its accountant had little if anything to add to this case, plaintiff tried using its principals to support the damage model. Plaintiff's principals were never disclosed as providing expert testimony. Moreover, to the extent plaintiff's principals had to rely on their experience in the industry, that would be expert testimony, not lay opinion testimony.

---

[1] Birnbaum's projections are further undermined—and further unreliable—given that, even after three attempts, his report still contains errors and inconsistencies. While plaintiff may wish to characterize the errors as inconsistencies, they nevertheless are errors and the jury does not even have the correct calculation from plaintiff's supposed expert accountant.

This is made clear by the recent Seventh Circuit decision in *Compania Administradora:* "Testimony based solely on a person's special training or experience is properly classified as expert testimony, and therefore it is not admissible under Rule 701." *See Compania Administradora v. Titan International Inc.*, 533 F. 3d 555, 561 (7th Cir. 2008).[2] Having no expert witness to verify their calculations, and having failed to previously disclose any other opinion witnesses, plaintiff is left to rely on guesswork and its principals' say-so, and that is not good enough. "Reliable inferences depend on more than say-so, whether the person doing the saying is a corporate manager or a putative expert." *Zenith*, 395 F.3d at 416.

Plaintiff's principals have no basis on which to project future income for this new and highly speculative (and ultimately unsuccessful) venture it was pursuing with PIL. Importantly, the evidence clearly shows that this was, in fact, a new venture. When the Court denied defendant's initial Rule 50 motion, the Court concluded that the business was not "new" because plaintiff had some experience selling defendant's product. As explained by Michael Welch— one of plaintiff's principals—their "experience with selling the Leads and Listings was three to four weeks at that time." *See* Tr., Welch Cross at 33, lines 18-19. Under any reasonable view, a three to four week "experience" is a new business. Besides, plaintiff never demonstrated during that brief time what its profits would be, and that is the purpose of the "new business rule." *See Kiswani*, 247 F.R.D. at 558 ("a new business has no right to recover lost profits because it has yet to demonstrate what its profits will be"). The question really is not how many days or weeks did the venture operate. The question is whether the new business demonstrated what its profits

---

[2] Plaintiff's explanation of its damage assumptions remains unclear, at best. At deposition, Magarity testified clearly that he relied on internet research in addition to his experience to come up with his attrition assumptions. At trial, Magarity was less than forthright on this point.

4

would be, and the answer in this case is a resounding "no".[3] A business can still be "new" if it is in its infancy stages. *See, e.g., TAS Distributing*, 491 F. 3d at 629 (the parties had some experience in attempting to earn profits and the court nevertheless rejected the lost profits claim as too speculative pursuant to the new business rule).

The court's suggestion that there should be some exception to the "new business rule" based on internet basis is a suggestion that finds no support in the precedent. Indeed, this suggestion is contrary to the very purpose of the new business rule and of the general rule that lost profits cannot be speculative. Internet businesses can be speculative and that is the reason why the courts guard against speculative claims of lost profits. If the business does not have a reasonable expectation of profits, a plaintiff cannot use the court to recover profits. The riskier the business, the harder it will be to prove lost profits, not vice versa.

*Milex Products v. Alra Labs, Inc.*, 237 Ill. App. 3d 177, is a case that is routinely cited, including by the Seventh Circuit, in support of the new business rule and as clarifying the exceptions to the rule. Rather than creating confusion, *Milex* provided clarity. *Milex* set forth the three exceptions to the new business rules, and these are the same—and only—exceptions that exist today, none of which apply to this case. There is no exception for internet-based businesses, nor should there be. Such businesses are inherently risky, and claims for lost profits—absent proper evidence—would be inherently speculative, as is the case here.

3. <u>Defendant's new business</u>

In addition to the fact that plaintiff had yet to demonstrate what its profits would be, the plaintiff's ability to earn income and generate profits depended on defendant's ability to generate revenue. Birnbaum admitted this truism when he conceded that if his revenue assumptions are

---

[3] To the extent plaintiff tries to argue that its principals had prior experience in other, similar business, this argument should be rejected. Prior success in similar business is not sufficient. *See, e.g., Kiswani*, 247 F.R.D. at 559.

wrong, then his commission assumptions are wrong, too. In his words, the two assumptions "go hand in hand." Given that admission, and given that this was a commission-based agreement, where is the evidence in this record from which the jury can identify a reasonable basis for concluding that plaintiff's revenue assumptions (an astounding $45 million) are reasonable? There is none.

The evidence in this case showed, without dispute, that this was a new product line for defendant, and defendant never perfected it. Plaintiff, of course, knew of defendant's difficulties—there can be no dispute about that. This entire venture was speculative from day one, and plaintiff and defendant were in it together. How can plaintiff reap a windfall of millions of dollars of damages with no evidence at all of the revenues that reasonably could have been generated by defendant? Such a result would be illogical.

4. The Industry Expert

Dillon McDonald, the only industry expert who testified in this case, informed the Court and the jury that plaintiff's assumptions are not only unreasonable, but also unrealistic. This sentiment was echoed by Jeff Coyle when he testified that the New Media division had lost approximately $20 million, and that the programs being sold by plaintiff was not on track to reach plaintiff's projected revenues. The Court should consider the actual performance of the business lines at issue.[4] Certainly the evidence of what happened in reality would be probative of whether plaintiff's projections are reasonable. *See TAS Distributing*, 491 F.3d 625 (considering evidence of what plaintiff actually happened as compared to what plaintiff alleged should have happened. To allow plaintiff to present their damage theory to the jury, would be to

---

[4] Defendant sought to introduce evidence of the actual performance of the specific programs at issue during the time frame covered by the October Agreement. The Court erred in refusing this testimony, which is contained in the offer of proof. At a minimum, the Court should consider Mr. Coyle's testimony regarding the performance of the

permit a fictional case. Plaintiff's damage model is based on unverified assumptions, unattainable in this industry and out of line with reality. Indeed, plaintiff's theory likely amounts to more than it ever would have obtained had it remained in the contract, and that is improper. *See Target Market Publishing v. ADVO, Inc.*, 136 F.3d 1139, 1145 (7th Cir. 1998) ("Illinois law does not permit an award of damages to put the complaining party in a better position than it would have been in absent the other party's breach").

     5.    Plaintiff's "Future" Assumptions and Projections

Even if the Court believes that plaintiff's three weeks of experience is sufficient to present the issue to the jury, there is nothing in those three weeks that would support the assumptions needed to reach the millions of dollars they want to present to the jury. The following assumptions have no basis in the evidence: (i) attrition rate; (ii) renewal rate; (iii) continued and sustainable business growth over 24 months; (iv) short term contracts would renew to long-term contracts; (v) price stability; (vi) market acceptance; (vii) expense stabilization (Birnbaum did not account for any increase in expenses despite the projected growth in business); (viii) sufficient lead generation and lead quality to support $45 million in revenue. The list goes on. Plaintiff's entire damage theory is pure speculation, based solely on plaintiff's say-so.

Plaintiff's effort to rely on its prior internal projections does not help its cause. In cases where parties have tried to rely on their own internal projections to substantiate lost profits, these efforts have been routinely rejected. *See Zenith*, 395 F.3d at 420 ("[l]ike many other internal projections, these represent hopes rather than results of scientific analysis"); *Target Market*, 136 F.3d at 1145 (a business plan relies on assumptions "that had not yet, and might never, come to pass"); *Kiswani*, 247 F.R.D. at 560 ("[a] proposal, however, is still based on speculation").

---

division at issue of which the business lines at issue were a major component.

## Conclusion

Wherefore, for the reasons stated above, this Court should enter judgment as a matter of law in favor of Defendant on Plaintiff's claim for lost profits.

Respectfully submitted,

**CONSUMER GUIDE, LLC, AND PUBLICATIONS INTERNATIONAL, LTD.**

By: /s/ Steven P. Blonder
      One of Their Attorneys

Steven P. Blonder (6215773)
Matthew S. Miller (6237701)
**MUCH SHELIST DENENBERG
 AMENT & RUBENSTEIN, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606-1615
(312) 521-2000