UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| THE SMART MARKETING GROUP, INC., | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Case No. 04-cv-00146 |
| v. | ) ) | Judge John W. Darrah |
| PUBLICATIONS INTERNATIONAL, LTD., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On February 6, 2009, following a jury trial, Plaintiff, The Smart Marketing Group, Inc. ("SMG"), was awarded a judgment in its favor in the amount of $5,612,500.00 against Defendant, Publications International, Ltd. ("PIL"), for breach of contract. PIL appealed the award of damages only, and, on October 8, 2010, the U.S. Court of Appeals for the Seventh Circuit vacated the award and ordered a new trial limited to the damages issue. *Smart Mktg. Group, Inc. v. Publ'ns Intl., Ltd.*, 624 F.3d 824, 833 (7th Cir. 2010).

On remand, the case was assigned to this Court, and the parties were granted leave to conduct new expert discovery. PIL has filed a Motion for Summary Judgment. PIL has also filed a motion to exclude SMG's expert pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

### BACKGROUND

The facts of this case are fully set out in the Seventh Circuit's opinion in *Smart Mktg. Group, Inc.*, 624 F.3d 824. Therefore, only a brief summary of the facts is necessary.

*The Underlying Contracts*

SMG was formed as a California corporation on March 4, 2003. On the same day, SMG contracted with publisher PIL to sell PIL's Consumer Guide "Approved" program to new car dealers. The Approved program involved selling dealers the right to be designated as a Consumer Guide Approved Dealership and held certain benefits. *Id.* at 826.

In July 2003, SMG signed a second contract with PIL to sell Consumer Guide "Leads & Listings" subscriptions to new car dealers, which was intended to generate internet leads for car sales. *Id.* Dealers who enrolled in Leads & Listings agreed to pay fees to receive brand-specific sales leads generated from PIL's website, ConsumerGuide.com. Each "qualified lead" would include the name and contact information of a consumer who had requested a price quote for a specific new car model and had entered contact information on the ConsumerGuide.com website. The parties planned that each dealership would receive an average of sixteen brand-specific leads per month from the website. *Id.* The parties also decided to put the Approved program on hold and focus on Leads & Listings. *Id.* at 827.

As of July 25, 2003, SMG was authorized to begin selling Leads & Listings contracts to dealers and, by August 30, had enrolled over 100 dealers. *Id.* However, by the end of September 2003, PIL had not completed development of software necessary to distribute those leads effectively. PIL asked SMG to limit new contracts to 125 per month, which SMG did. Between July and November, SMG sold 428 Leads & Listings contracts. *Id.* at 826-27.

On October 24, 2003, the parties entered into a new two-year contract, which gave SMG the right to sell both the Approved and Leads & Listings programs (the "October contract"). The October contract expressly voided the two previous contracts. It also provided a commission schedule and provisions on terminations. Among other things, the October contract provided

2

that commissions due SMG would be reduced to account for dealers' cancellations, credits, unpaid accounts or refunds. However, PIL continued to struggle with developing the software to deliver the promised leads, and, on November 18, 2003, PIL terminated the October contract. *Id.* at 827.[1]

In January 2004, SMG sued PIL. At trial in 2009, SMG sought damages based on its lost profits, which it asserted were approximately $8.8 million. The jury found that PIL breached the October contract and awarded SMG lost profits of approximately $5.6 million. *Id.* at 827-29.

PIL appealed the award but not the breach of contract. The Seventh Circuit affirmed the district court's denial of PIL's Rule 50(b) motion for judgment as a matter of law. *Id.* at 832. The court declined, "after looking at all of the evidence in the record," to find that PIL was entitled to judgment as a matter of law that damages were not established. *Id.* at 829. However, the Seventh Circuit ruled that the district court erred when it denied PIL's Rule 59 motion for a new trial or remittitur of damages. The court then held that the damages award "fell so far outside anything the evidence might have supported that the district court abused its discretion in refusing to order a new trial on damages." *Id.* at 833. The Seventh Circuit vacated the damages award and remanded for a new trial limited to damages. *Id.* at 834.

*SMG's Damages Expert on Remand*

After the parties were granted leave to conduct new expert discovery, SMG designated, as its damages expert, David Nolte, a certified public accountant. In his Fed. Rule of Civ. P. 26(a) Report, Nolte estimated that SMG lost $4.7 million in profits it would have earned during the two-year course of the October contract. (Def.'s Mot. to Exclude Expert, Exh. A.) In

---

[1] PIL eventually contracted with another sales force to sell a similar leads-distribution program in mid-2004 and continued with that program until it sold the Consumer Guide business in late 2005.

3

reaching his estimate, Nolte relied on: 1) the 558 contracts SMG actually sold from March 5, 2003 through November 18, 2003; 2) the pro forma sales projections that SMG presented to PIL during their negotiations of the October contract (the "Management Projections"); and 3) the annual reports of Autobytel, Inc., a company that sells marketing services to automobile dealers. *Id.* at 4-14.

Nolte relied on SMG's Management Projections to estimate the number of contracts that SMG would have sold after November 18, 2003. Those projections estimated SMG would sell 130 to 135 contracts monthly (30 to 35 Approved contracts and 100 Leads & Listings contracts). *Id.* at 6. Nolte used a 2.2% default rate and assumed that 75% of the non-defaulting dealers would renew for an additional term upon expiration. *Id.* at 8. Although the October contract was set to expire on October 24, 2005, Nolte also included projections for November 2005 because SMG would continue to collect commission on those contracts. *Id.* at 9. Nolte also examined Autobytel's performance to illustrate the reasonableness of SMG's projections. *Id.* at 10-11.

Nolte estimated that SMG would have earned 32% in commissions for every dollar of PIL sales and concluded SMG would have earned gross revenues of $9.9 million from March 5, 2003 through the October 24, 2005 termination. *Id.* at 9-10. He calculated SMG's profit rate to be 30.7% of commissions and also compared it to Autobytel. *Id.* at 12-13. Nolte estimated SMG's variable costs to be $4.9 million and also deducted the $300,000 that PIL paid SMG to reach his $4.7 million estimate. *Id.* at 14.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its

motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

*PIL's Motion for Summary Judgment*

PIL argues that summary judgment should be granted in its favor because SMG cannot calculate lost profits to a reasonable degree of certainty to sustain a damages award. PIL relies heavily on the Seventh Circuit's opinion in *Smart Mktg. Group, Inc.*, 624 F.3d 824, to identify perceived "fatal deficiencies" in the opinions proffered by SMG's expert, Nolte. However, PIL overstates the Seventh Circuit's opinion in this regard.

### The New-Business Rule and Lost Profits

First, PIL argues that Illinois's "new-business" rule, which has a general prohibition on damages for lost profits, applies in this case. In *Smart Mktg. Group, Inc*., 624 F.3d at 830, the Seventh Circuit held that the evidence "readily supports the application of the 'new-business' rules" to SMG and PIL's venture and noted that the evidence submitted at trial "tended to show how difficult it is to predict how successful" that venture would have been. However, despite applying the new-business rule to the parties' venture, the Seventh Circuit did not rule that SMG could not recover lost profits. Rather, the court left the door open as to whether SMG could, at a second trial, establish a reasonable award of damages based on lost profits.

### Past Sales

PIL also claims that the Seventh Circuit held that "SMG's past sales do not provide a valid basis for estimating lost profits." (Defs.' Mem. in Supp. of Mot. at 7.) Although it is true that the Seventh Circuit criticized SMG's evidence of past sales, the court did not hold that the evidence of SMG's actual sales should be excluded from the trial or that it was otherwise inadmissible.

### The Management Projections

PIL also attacks Nolte's use of the internal Management Projections generated by SMG's principals. But, again, the Seventh Circuit made no finding that those projections could not be used by an expert. Rather, the Seventh Circuit criticized SMG's principals as having "little to no relevant experience" in starting up a new internet business. *Smart Mktg. Group, Inc.*, 624 F.3d at 833.

SMG points out that those Management Projections involved a collaborative effort between the two parties during negotiations for the October contract. Furthermore, SMG argues

that Nolte verified the Management Projections by relying on various data to evaluate their reasonableness, as well as examined Autobytel's growth. SMG has raised an issue of material facts as to whether those internal projections are a sufficient basis to calculate lost profits.

PIL also argues that the Management Projections are inadmissible under the parol evidence rule. However, that rule does not apply here, since SMG is not submitting the Management Projections to contradict or vary the October contract. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005) (parol evidence rule bars extrinsic evidence to contradict or vary a contract). Despite PIL's argument, SMG is not seeking to bind PIL to a contractual obligation to those projections. Rather, SMG is using the projections as evidence of what the parties expected to achieve via the October contract.

## PIL's Ability to Obtain and Deliver Leads

PIL also argues that SMG's estimate of lost profits is deficient because SMG has failed to present evidence that PIL could actually obtain and effectively distribute the number of leads sufficient to support SMG's projections, including whether PIL could purchase leads on the wholesale market to supplement those generated by the website.

The Seventh Circuit did acknowledge PIL's difficulty with the software and criticized SMG for having no solid evidence about the number of leads or reliable evidence about the ratio of wholesale leads to retail sales. *Smart Mktg. Group, Inc.*, 624 F.3d at 833. However, as both SMG and its expert, Nolte, point out, PIL did successfully develop and deploy its lead distribution technology by mid-December 2003 and contracted with another sales group thereafter in 2004. Furthermore, SMG argues that in 2003, there was an established wholesale market for internet leads. SMG has sufficiently raised a contested issue on this point.

PIL has not carried its burden of showing that there is no genuine issue of material fact as to SMG's damages evidence. Consequently, PIL's Motion for Summary Judgment is denied.

*PIL's Motion to Exclude Expert Testimony*

PIL has also filed a motion to exclude SMG's expert pursuant to Fed. R. Evid. 702 and *Daubert*, 509 U.S. 579. The Court denies this Motion as premature but grants PIL leave to file it as a pre-trial motion.

## CONCLUSION

PIL contends, based on the Seventh Circuit's holding "that this damage award fell so far outside anything the evidence might have supported that the district court abused its discretion in refusing to order a new trial on damages" and its description of the record as "solely lacking in evidence," that summary judgment in its favor is not precluded. *Smart Mktg. Group Inc.*, 624 F.3d at 833. However, the Seventh Circuit expressly held that "[i]t is conceivable that the evidence taken as a whole might have supported some level of damages for Smart." *Id.* at 832. PIL improperly concludes from the Seventh Circuit's comment regarding the insufficiency of the evidence to support the amount of the damages award that the Seventh Circuit determined that no amount of damages could reasonably be awarded.

For the reasons set forth above, Defendant PIL's Motion for Summary Judgment [328] is denied. Defendant PIL's Motion to Exclude Expert Testimony [327] is also denied without prejudice to be raised as a pre-trial motion.

Date:___May 29, 2013_____   _____
                                                                         JOHN W. DARRAH
                                                                         United States District Court Judge