UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE SMART MARKETING GROUP, INC. | )<br>) |
| Plaintiff, | )<br>) No. 04 C 146 |
| v. | )<br>) Judge Sara L. Ellis |
| PUBLICATIONS INTERNATIONAL, LTD., | )<br>) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff The Smart Marketing Group, Inc. ("SMG") filed suit against Publications International, Ltd. ("PIL"). The case proceeded to trial on SMG's breach of contract claim. The jury returned a verdict for SMG, awarding it $5,612,500.00 in damages. PIL appealed the damages award only, which the Seventh Circuit vacated and remanded to this Court for a new trial limited to damages only. *Smart Mktg. Grp. Inc. v. Publ'ns Int'l, Ltd.*, 624 F.3d 824 (7th Cir. 2010). Before the Court are various motions *in limine* filed by both SMG and PIL. The Court has addressed PIL's motion *in limine* to exclude the expert testimony of David Nolte in a separate Opinion and Order. This Opinion and Order addresses the remaining motions.

## ANALYSIS

**I. PIL's Motion to Exclude Opinion Testimony from Walter Dickinson Regarding Renewal Rates [378]**

PIL moves to preclude SMG from introducing Walter Dickinson's opinion about the renewal rate for dealers enrolled in the Leads & Listings and Approved programs, arguing that

this testimony does not qualify as admissible lay or expert opinion testimony under Federal Rules of Evidence 701 or 702 and that it is unreliable.[1]

Dickinson was president of Info-4-Cars, a company that provided certain services for the Approved and Leads & Listings programs. At his deposition, Dickinson was asked whether, based on his experience in the industry and with the programs at issue in this case, he believed that the majority of dealers would have honored their contracts with PIL if they had received the leads they had contracted for. Dickinson Dep. 219:11–17. Dickinson responded that he could not answer the question because he did not know "whether Consumer Guide leads were going to turn into sales," but that in his experience, if leads did turn into sales, a business could keep between 75-80% of its dealers.[2] *Id.* at 219:22–220:15.

As PIL argues, Dickinson's testimony on renewal rates is not admissible as lay opinion testimony. Rule 701 provides that a witness not testifying as an expert may provide opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Lay opinion testimony is allowed in lost profits cases "where the witness bases his opinion on particularized knowledge he possesses due to his position within the company." *Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009). Thus, "[f]or example, the owner of an established business with a documented history of profits may testify to his expectation of continued or expanded profits when that opinion is based on his 'knowledge and

---

[1] PIL also argues that SMG's expert, David Nolte, should not be allowed to rely on this opinion in estimating lost profits. The Court addresses whether Nolte can rely on Dickinson's opinion on renewal rates in its separate Opinion and Order addressing PIL's motion to exclude Nolte's testimony.
[2] In further questioning, Dickinson agreed with counsel that he had stated that approximately 30% of dealers would not renew for whatever reason, leading to an inconsistency in his testimony. Dickinson Dep. 221: 13–222:13.

participation in the day-to-day affairs of [his] business.'" *Id.* (alteration in original) (quoting Fed. R. Evid. 701 advisory comm. nn.). Here, however, Dickinson disclaimed basing his renewal rate testimony on his experience with the Leads & Listings or Approved programs. *See* Dickinson Dep. 220:13–15 ("I can't tell you whether Consumer Guide leads were going to turn into sales, so I can't answer that question."). His answers related to renewal rates were instead based on his experience in the industry and thus his testimony on that subject is not admissible as lay opinion testimony. *See Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.*, 533 F.3d 555, 560 (7th Cir. 2008) (testimony of business owner was not lay opinion testimony where owner's "attempt at valuation was not based on any knowledge obtained through his special relationship with the items in question; instead, he simply looked at a list of items provided by [plaintiff], and he estimated their value based on his extensive experience purchasing and selling the type of goods at issue," noting that such testimony was the type "traditionally provided by an expert").

Nor is Dickinson's testimony regarding renewal rates admissible as expert testimony, for SMG did not disclose Dickinson as an expert or provide an expert report from him. *See* Fed. R. Civ. P. 26(a)(2); *Titan Int'l, Inc.*, 553 F.3d at 561 (affirming exclusion of witness' testimony where defendant did not disclose witness as expert prior to disclosure deadline). Thus, PIL's motion is granted in part, and Dickinson will not be allowed to testify regarding renewal rates.

## II. PIL's Motion to Exclude Evidence of Its Breach of Contract [379]

PIL moves to exclude evidence regarding the manner of PIL's breach of contract and the circumstances that led to that breach. PIL also asks that SMG be precluded from referencing the jury's verdict or that a prior jury ruled adversely to PIL. SMG responds that it has no intention of relitigating the question of breach but that certain circumstances surrounding PIL's breach

may be relevant to its claim for damages. It also contends that the jury should be instructed that a prior trial was held in which PIL was found to have breached its contract, for it will be impossible to preclude the jury from learning of the prior trial as the same witnesses will testify and their prior trial testimony will be introduced into evidence. To the extent possible, the prior trial should not be mentioned before the jury. When referring to testimony given at the prior trial, the parties can refer generally to prior testimony without specifying where that testimony was given. Similarly, there is no need to inform the jury that a prior trial was held at which a prior jury found that PIL breached the contract. The parties have submitted an agreed statement of the case that does not include any reference to the prior trial while still setting forth the jury's finding of breach. The Court is also not convinced that the circumstances of PIL's breach of contract are relevant to the lost profits determination. Any characterization of the termination as having been "in bad faith" or done for "pretextual reasons," as made in various pre-trial filings by SMG, must be avoided. *See, e.g.*, Doc. 382 at 1 ("[A] jury returned a verdict finding that Defendant acted in bad faith by terminating its contract with SMG for pretextual reasons . . . ."). PIL's motion is thus granted. If there is a particular circumstance surrounding PIL's breach that SMG can identify at trial that is critical to its damages claim, it should raise that issue with the Court and PIL outside the jury's presence for the Court's consideration.

**III.    PIL's Motion to Exclude Evidence Regarding SMG's Sales Projections [380]**

PIL seeks to exclude evidence, including testimony, regarding sales projections that SMG presented to PIL during their negotiations of the October 2003 contract (the "Management Projections"). SMG's expert, David Nolte, relies on the Management Projections to estimate the number of contracts that SMG would have sold after the October 2003 contract was terminated. PIL argues that the Seventh Circuit has already found that the Management Projections are

4

unreliable and that SMG's principals are not qualified to offer lay opinion testimony to support their admission at trial. It also argues that the Management Projections may not be disclosed under Rule 703 because their probative value does not substantially outweigh their prejudicial effect. SMG argues that the Management Projections are admissible and that the Court need not conduct an inquiry under Rule 703.

In its opinion, the Seventh Circuit stated that PLI "is on somewhat firmer ground when it objects that Welch and Magarity (Smart's principals) improperly offered lay testimony about their projections for the attrition and renewal rates for the two programs. Neither one was basing his estimates on his own experience in the day-to-day affairs of the (new) business." *Smart Mktg. Grp. Inc.*, 624 F.3d at 833. The Seventh Circuit thus strongly suggested that SMG is precluded from offering the Management Projections as substantive evidence through Welch or Magarity as lay opinion testimony. *See Von der Ruhr*, 570 F.3d at 862–65 (excluding business owner's testimony about marketing a new drug where he had little personal experience with the drug, noting that the business owner had no particularized knowledge of the specific market or competition). SMG argues that, at this trial, it will provide a more complete basis for its principals' experience that would differentiate this situation from that in *Von der Ruhr*. But SMG has not provided the Court with any indication of what experience its principals had that would be different from what was presented at the first trial and that would demonstrate that the Management Projections were based on their experience in the day-to-day affairs of the business. Thus, the Court finds that the Management Projections are inadmissible as substantive lay opinion testimony.

The Management Projections are nonetheless admissible under Rule 703. Rule 703 provides that an expert may rely on facts or data that are otherwise inadmissible as long as they

5

are of the type that would be reasonably relied on by experts in the field. Fed. R. Evid. 703. The underlying facts or data may be disclosed to the jury if "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.* PIL argues that the Management Projections have little probative value, relying on the Seventh Circuit's opinion to argue that these projections are inherently unreliable. As discussed in connection with PIL's motion to exclude the testimony of David Nolte, the issue of the unreliability of the Management Projections is an issue for cross-examination and for the jury's ultimate determination. The Court is also confident that PIL can mitigate any potential prejudice through effective cross-examination. On the other hand, the introduction of the Management Projections will be particularly helpful to the jury's evaluation of Nolte's opinion, as the calculation of lost profits is complex and can be aided by reference to the underlying data.

IV. **PIL's Motion to Exclude Evidence that William Magarity Sold His Home or Suffered Personal Financial Devastation [381]**

PIL seeks to preclude SMG from introducing evidence that William Magarity, one of SMG's principals, sold his home or otherwise suffered personal financial devastation in the course of SMG's relationship with PIL. This motion *in limine* is precipitated by Magarity's testimony at the first trial on this topic. PIL argues that the testimony is not relevant to the jury's determination of SMG's lost profits and poses a substantial danger of unfair prejudice and jury confusion, warranting exclusion pursuant to Federal Rules of Evidence 401 and 403. SMG agrees that Magarity's personal finances are not relevant to the issue of its damages. It argues, however, that if PIL suggests at trial that SMG's cash shortage or efforts to be paid on a timely basis indicate a lack of profitability, it must be allowed to explain the cause for any cash shortage and how it was addressed, which presumably includes the selling of Magarity's home. The Court fails to understand the relevance of these issues to the determination of SMG's lost profits

resulting from PIL's breach of contract. Moreover, testimony of personal financial devastation in this situation appears designed merely to elicit sympathy from the jury. The Court thus grants the motion *in limine*, subject to reconsideration if SMG proffers a sufficient basis at trial for why such evidence is relevant and not unduly prejudicial.

## V. SMG's Motion to Preclude Reference to the Seventh Circuit's Holding and Opinion [382]

SMG has moved to exclude any reference to the Seventh Circuit's holding and opinion in this case. SMG argues that although the opinion may inform the Court in its legal rulings and instructing the jury, it is not itself evidence and its introduction as such would be unfairly prejudicial to SMG as it would suggest that the Seventh Circuit drew certain conclusions as to the amount of damages SMG suffered or found that the jury in the first trial erred in awarding damages to SMG. PIL agrees that reference should not be made to the verdict in the first trial, the amount of the verdict in the first trial, and the Seventh Circuit's decision to vacate the damages award. PIL argues, however, that the Seventh Circuit's opinion is important to the jury's understanding of the opinions of the parties' experts and thus should be admitted. PIL has submitted various portions of the Seventh Circuit's opinion that it believes should be admitted as evidence, which include statements of the law regarding lost profits and summaries of the factual record presented at the first trial and the Seventh Circuit's findings with respect to that record.

The Seventh Circuit's opinion is not evidence that is admissible at trial. *See Lockformer Co. v. PPG Indus., Inc.*, No. Civ. A. 99-C-6799, 2003 WL 1563703, at *2 (N.D. Ill. Mar. 25, 2003) ("Judicial opinions and parties' own briefs are not evidence."). In this case, there are other ways for PIL to raise the issues it seeks to elicit through introduction of the Seventh Circuit's opinion, which counsels against allowing any reference to that opinion. *See MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*, 468 F. App'x 816, 824 (10th Cir. 2012) (in determining

7

whether judicial opinions are admissible as evidence, the court must perform a balancing test, which includes consideration of whether other means are available to establish the claim or defense and whether "the judicial representation [would] prevent the jury from making its own, and perhaps different, finding"); *Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1534 (10th Cir. 1986) (finding that evidence of a similar accident should not have been admitted through a judicial opinion but rather through testimony of one familiar with the accident, noting "that the admission of a judicial opinion as substantive evidence presents obvious dangers. The most significant possible problem posed by the admission of a judicial opinion is that the jury might be confused as to the proper weight to give such evidence. It is possible that a jury might be confused into believing that the opinion's findings are somehow binding in the case at bar. Put most extremely, the jury might assume that the opinion is entitled to as much weight as the trial court's instructions since both emanate from courts"). Although the parties' experts referred to the Seventh Circuit's opinion in formulating their reports, the Court does not find the Seventh Circuit's opinion to be integral to the experts' opinion or necessary to the jury's understanding of the experts' opinions. PIL's expert, Michael G. Mayer, criticizes David Nolte, SMG's expert, for failing to address issues raised by the Seventh Circuit in its opinion. But Mayer can make these same points without mentioning the Seventh Circuit's opinion by criticizing Nolte's model for its allegedly underlying flaws. Similarly, PIL can cross-examine Nolte by focusing on the issues raised by the Seventh Circuit's opinion without making reference to the fact that those issues were raised by the Seventh Circuit. This will avoid the inherent prejudice that would result from referring to the Seventh Circuit's opinion in this case, which was based on evidence presented in the first trial. *See Am. Nat'l Bank & Trust Co. of Chicago v. K-Mart Corp.*, No. 77

8

C 484, 1986 WL 6938, at *2 (N.D. Ill. June 10, 1986) (excluding any reference to the prior verdict in the case or reversal by the Seventh Circuit). Thus, SMG's motion is granted.

**VI.     SMG's Motion to Exclude Evidence of William Magarity's Prior Conviction [383]**

SMG seeks to exclude evidence of Magarity's 1986 criminal conviction for forgery pursuant to Federal Rules of Evidence 403, 404(b), and 609(b). Rule 609(b) provides that a criminal conviction that is over ten years old may be used to impeach only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). Rule 609 is intended "to ensure that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." *United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted). All evidentiary decisions are subject to Rule 403's balancing test, under which evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Prior to the first trial of this matter, the Court granted a similar motion *in limine*, precluding PIL from using evidence of Magarity's criminal conviction as substantive or impeachment evidence. *See* Doc. 141 at 2–5. SMG urges the Court to follow that ruling and argues additionally that PIL can point to no probative value that Magarity's conviction would have here in the damages trial, particularly where the only probative value that PIL pointed to before the first trial related to SMG's breach of contract, which is no longer at issue. PIL responds by asserting that it does not currently intend to introduce evidence of or otherwise refer to Magarity's conviction but asks the Court to defer ruling on the motion until trial if circumstances arise that would warrant inquiry into the conviction. PIL also argues that Rule

9

608(b), not Rule 609(b), governs whether it can inquire about the facts underlying Magarity's conviction on cross-examination. *See United States v. Barnhart*, 599 F.3d 737, 747 (7th Cir. 2010) (witness may be cross-examined regarding the facts underlying a conviction related to his character for truthfulness, subject to Rule 403's limitations). The Court agrees with SMG that reference to and evidence of Magarity's criminal conviction should be excluded pursuant to both Rules 609(b) and 403. PIL has not proffered any reason why a decades-old conviction of one of SMG's principals is probative as to the amount of lost profits SMG suffered as a result of PIL's breach. On the other hand, the prejudicial effect of allowing inquiry into or evidence of the conviction is great. SMG's motion is thus granted, subject to reconsideration at trial if PIL provides the Court with a proper basis that would overcome the prejudice that would result from allowing inquiry into this conviction.

## CONCLUSION

For the foregoing reasons, PIL's Motion to Exclude Opinion Testimony from Walter Dickinson Regarding Renewal Rates [378] is granted in part; PIL's Motion to Exclude Evidence of Its Breach of Contract [379] is granted; PIL's Motion to Exclude Evidence Regarding SMG's Sales Projections [380] is granted in part and denied in part; PIL's Motion to Exclude Evidence that William Magarity Sold His Home or Suffered Personal Financial Devastation [381] is granted; SMG's Motion to Preclude Reference to the Seventh Circuit's Holding and Opinion [382] is granted; and SMG's Motion to Exclude Evidence of William Magarity's Prior Conviction [383] is granted.

Dated: February 18, 2014

SARA L. ELLIS
United States District Judge

10